FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 11, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EVA B., | No. 1:18-cv-03015-MKD |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 16, 17 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 4. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 16, and denies Defendant's Motion, ECF No. 17.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER - 2

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER - 3

gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER - 5

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income benefits on July 29, 2014 alleging a disability onset date of July 19, 2013. Tr. 231-36. Benefits were denied initially, Tr. 162-70, and upon reconsideration. Tr. 176-82. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on January 30, 2017. Tr. 65-114. On March 30, 2017, the ALJ denied Plaintiff's claims. Tr. 12-34.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 29, 2014. Tr. 17. At step two, the ALJ found Plaintiff has the following severe impairments: personality disorder; depression; anxiety disorder; diabetes; and bilateral knee condition and obesity. Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following additional limitations:

> [s]he can only occasionally climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds. She can occasionally kneel, crouch, and crawl. She should avoid concentrated exposure to loud noises, extreme cold, odors, gases, dust, humidity, fumes, poor ventilation, and hazards (such as dangerous machinery and unprotected heights). She can understand and remember simple instructions associated with unskilled work tasks. She

ORDER - 6

should not have contact with the general public, but incidental contact with the general public is not precluded. She can interact frequent[sic] with 5 or fewer co-workers, which includes collaborative efforts lasting up to 20 minutes.

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 26. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform such as packing line worker, cleaner (housekeeping), and mail clerk. Tr. 27. Alternatively, if Plaintiff had additional limitations of standing and walking for a total of 5 hours in an 8-hour day and being off task for 10% of the workday, the ALJ concluded Plaintiff could perform the job of outside deliverer. Tr. 27. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from July 29, 2014 through the date of the decision. Tr. 27.

On December 1, 2017, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 16. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3. Whether the ALJ properly determined Plaintiff's severe impairments at step two.

*See* ECF No. 16 at 4-20.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the opinions of Edward Lane, M.D., Albert Ooguen Gee, M.D.,[1] and Tae-Im Moon, Ph.D. ECF No. 16 at 4-10.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

---

[1] The ALJ's decision refers to Dr. Gee as Dr. Ooguen. Tr. 25.

ORDER - 8

Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id*. at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216.

### 1. Dr. Lane

Dr. Lane is Plaintiff's long-time treating physician. *See* Tr. 123-31 (citing treatment records dating back to 2009); Tr. 520. In May 2015, Dr. Lane completed a medical report stating that Plaintiff's pain and stiffness caused by osteoarthritis in

her knees and influenced by depression would limit her ability to work by causing her to miss four or more days per month. Tr. 820. He opined that work requiring her to stand or walk would cause her pain to increase and her prognosis was "poor . . . but may improve with surgery." Tr. 821. In October 2016, Dr. Lane completed a physical functional evaluation, in which he opined that Plaintiff's osteoarthritis caused a marked impairment in her ability to stand, walk, lift, carry, push, pull and crouch, Plaintiff's depression and anxiety caused a marked impairment in Plaintiff's ability to communicate, and Plaintiff was unable to meet the demands of sedentary work. Tr. 1414-43.

The ALJ assigned Dr. Lane's opinion little weight, Tr. 25, while assigning "significant weight to the medical opinions of the state agency consultants," Tr. 24, which included the April 2015 contradictory medical opinion of Alnoor Virji, M.D., Tr. 155-57.[2] Tr. 24-25. The ALJ was required to provide specific and legitimate reasons for rejecting Dr. Lane's opinions. *Bayliss*, 427 F.3d at 1216.

_____

[2] The ALJ's decision also cites the record (B3A) containing the physical capacity assessment of a non-physician single decision maker (SDM) on initial review. Tr. 24 (citing Tr. 140-42). In determining a claimant's residual functional capacity, "[a]n ALJ may not accord any weight, let alone substantial weight to the opinion of a non-physician SDM." *Morgan v. Colvin*, 531 Fed. App'x 793, 794-95 (9th Cir.

First, the ALJ gave little weight to Dr. Lane's opinion because "Dr. Lane's opinions do not provide a completed evaluation with objective findings consistent with such limitations." Tr. 25. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. For example, an ALJ may permissibly reject check-box reports that are unaccompanied by any explanation of the bases for their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). However, if treatment notes are consistent with the opinion, a check-box form may not automatically be rejected. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014). The Ninth Circuit has explained that "the treating physician's opinion as to the combined impact of the claimant's limitations—both physical and mental—is entitled to special weight." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). "The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Id*. The record shows that Dr. Lane began treating Plaintiff in 2009

_____

June 21, 2013) (unpublished) (citing Program Operations Manual System DI 24510.050)).

ORDER - 11

and his treatment records from numerous examinations during the relevant period are included in the record. Tr. 512-629, 1444-1590. Accordingly, the ALJ was not entitled to reject Dr. Lane's opinions merely because the opinions were prepared without the inclusion of a "complete[] evaluation."

Second, the ALJ concluded Dr. Lane's opinion was not consistent with his other treatment notes or notes from other providers. Tr. 24. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Moreover, an ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the ALJ acknowledged that the diagnostic imaging revealed knee abnormalities. Tr. 24; *see* Tr. 806 (Jan. 2015 x-ray showing "[m]ild osteoarthritic spurring of the medial and lateral joint compartments); Tr. 838 (Feb. 2016 x-rays showing moderate joint space narrowing in the medial compartment of the right knee indicating moderate degenerative joint disease); Tr. 621 (Aug. 2014 MRI

showing osteoarthritic changes of the medial and lateral compartments of mild-to-moderate severity including less than 50% cartilage height loss). Nonetheless, the ALJ rejected Dr. Lane's opinion because:

> [m]ost records show that she presented in no acute distress; had no muscle atrophy or abnormality in gait; and showed no deficits in range of motion, muscle strength/tone, sensation, or strength in the upper or lower extremities. She did not exhibit significant swelling in the legs, and did not exhibit signs of frequent falls due to knee pain.

Tr. 24 (citing Tr. 376 (Sept. 2014: new patient evaluation at cardiovascular clinic); Tr. 394-95 (Jan. 2014: epilepsy clinic note), Tr. 459 (Nov. 2014: cardiology follow-up), Tr. 479 (Sept. 2014: cardiology follow-up), Tr. 916 (Dec. 2016: clinic progress report noting "musculoskeletal problem with right knee"); Tr. 929 (Nov. 2016: clinic progress note noting problem with right knee); Tr. 937 (Oct. 2016: clinic progress note indicating problem with right knee); Tr. 1236 (Mar. 2015: emergency room report after being seen for chest pressure); Tr. 1373 (June 2016: emergency room report after chest x-ray); Tr. 1406 (Oct. 2016: epilepsy clinic note); Tr. 1424 (May 2015: office visit for hypersomnia); Tr. 1429 (Aug. 2015: office visit for hypersomnia); Tr. 1437 (Sept. 2016: follow-up post angiogram for cardiovascular exam pre- knee replacement surgery), Tr. 1445-51 (July 2015: office visit for swollen glands) , Tr. 1459 (July 2015: follow-up regarding fatigue and depression); Tr. 1462 (July 2015: office visit for pelvic examination); Tr. 1482 (Dec. 2015: office visit for headache, numbness and diabetes); Tr. 1492 (Feb.

2016: office visit noting "no change" in bilateral knee pain and including referral

to a specialist); Tr. 1499-1500 (Mar. 2016: follow-up following hospitalization for

high blood pressure); Tr. 1507 (May 2016: office visit noting right knee pain

despite no edema and providing referral to orthopedic surgery); Tr. 1509 (May

2016: follow-up post fall onto left side); Tr. 1516-17 (Aug. 2016: encounter for

preprocedural cardiovascular examination noting Plaintiff was cleared for knee

surgery); Tr. 1530 (Oct. 2016: office visit for polyarthralgia negative for joint

swelling or gait problem); Tr. 1545 (Dec. 2016: office visit for hives).

Here, the ALJ's selective reliance on physical examination findings from

office visits almost entirely unrelated to Plaintiff's knee impairment to reject Dr.

Lane's opinion in favor the non-examining physician was improper. An ALJ may

not "cherry-pick[ ]" aspects of the medical record and focus only on those aspects

that fail to support a finding of disability. *Ghanim v. Colvin*, 763 F.3d 1154, 1164

(9th Cir. 2014); *see Holohan*, 246 F.3d at 1207 (faulting the ALJ's selective

reliance on some aspects of the treating records while ignoring other aspects

suggestive of a more severe impairment). Moreover, "[t]he subjective judgments

of treating physicians are important, and properly play a part in their medical

evaluations." *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988). Plaintiff's knee

pain and objective findings related to the knee pain were well documented

throughout Dr. Lane's treatment record and other records including those of her

orthopedic surgeon, Naga Suresh Cheppalli, M.D., physical therapy, and orthopedic consultation with Dr. Gee. *See, e.g.*, Tr. 530-32 (Dec. 2014: Dr. Lane chart note discussing right knee pain, swelling and limited flexion, and therapy which did not help); Tr. 552 (Sept. 2014: Dr. Lane chart note recommending orthopedic consultation to consider knee injections, which she declined); Tr. 553 (July 2014: Dr. Lane follow-up for right knee pain noting intermittent swelling, decreased range of motion, and that physical therapy has not helped); Tr. 557 (June 2014: Dr. Lane chart note indicating "chronic" right knee pain); Tr. 557-59 (June 2014: Dr. Lane referral to physical therapy for knee pain contributed by poor muscle conditioning); Tr. 626 (July 2014: physical therapy progress note indicating at least 20% impairment); Tr. 770-802 (physical therapy records); Tr. 807-09 (Jan 2015: Dr. Cheppalli chart note indicating clinical examination revealed "significant pain and discomfort" and discussing treatment options; stating "[s]he is extremely disabled by pain and had multiple falls because knee locking up. She tried the anti-inflammatories and 12 weeks physical therapy without any help. She is extremely needle phobic . . . . Complains of frequent swelling of her knee joint."); Tr. 974 (June 2016: limping due to her knee injury and noting "may be having a knee replacement, walks with a limp"); Tr. 979 (June 2015: gait limping due to her knee); Tr. 1217-24 (Mar. 2016: Dr. Gee noting she "walks with a slightly antalgic gait because of what appears to be right knee pain," listing ways to help alleviate

ORDER - 15

symptoms including staying off of her feet, and stating other than cortisone injections, "her only other surgical option is arthroplasty"); Tr. 1469-71 (Sept. 2015: Dr. Lane progress note regarding bilateral knee pain gradually increasing, indicating gait is "with stiff knees," though both knees "appear normal."); Tr. 1475-79 (Nov. 2015: Dr. Lane progress note indicating no improvement with topical treatment for knee pain and referral to orthopedic surgery); Tr. 1494 (Feb. 2016: Dr. Lane progress note indicating "[o]rthopedic surgeon has told her she needs knee replacement. Needs disabled parking permit."); Tr. 1510-11 (June 2016: Dr. Lane progress note indicating increasingly difficulty walking and prescribing a rolling walker); Tr. 1515 (Aug. 2016: Dr. Lane progress note indicating Dr. Korimerla has cleared Plaintiff for knee replacement surgery); Tr. 1518 (Sept. 2016: Dr. Lane progress note regarding chronic pain in both arms and legs).

Moreover, the record suggests her pain was sufficient to justify a treating provider's recommendation for intervention with arthroplasty, for which she was medically cleared. Tr. 1515. However, the recent treatment records of her orthopedic specialist, Dr. Cheppalli, from November 2015 through 2016 are not part of the record. *See* Tr. 69-71, 87-88 (discussion between ALJ and attorney regarding the record). During this period of time, the record indicates Dr. Cheppalli referred Plaintiff for further orthopedic evaluation with Dr. Gee at the

University of Washington, Tr. 1223, ordered further imaging, Tr. 838, and told Plaintiff "she needs a knee replacement," Tr. 1491. The ALJ's decision did not acknowledge the incomplete record. Instead, the ALJ attributed the discussion of surgery only to Dr. Gee and concluded that any ambiguity as to whether or not surgery was recommended was inconsequential in light of Plaintiff's clinical presentation. Tr. 22-23. The ALJ did not rely upon medical expert testimony or otherwise develop the record by ordering a consultative physical examination. Instead, the ALJ relied upon the April 2015 opinion of non-examining physician Dr. Virji, rendered shortly after Plaintiff's arthroscopic surgery, which was based upon the presumption Plaintiff's condition would improve despite her surgeon's expressed lack of optimism about the anticipated surgical outcome. Tr. 152 ("light RFC is applicable. Duration is considered. Knee function is expected to improve."); Tr. 809 (Cheppalli chart note stating "I am not very optimistic about the results and I expressed this to her. She understands that her outcome might not be as predictable as meniscal procedures . . ."). The ALJ failed to offer specific and legitimate reasons supported by substantial evidence to reject Dr. Lane's opinion that she was limited to less than sedentary work.

A remand is appropriate to allow the ALJ to further develop the record by obtaining all treatment records from Plaintiff's orthopedic surgeon, to consider

whether or not knee replacement surgery was needed, and if warranted to obtain a consultative examination and/or the testimony of a medical expert.

    *2. Dr. Gee*

    Dr. Gee, an orthopedic specialist, performed an evaluation of Plaintiff's knee on March 18, 2016 and discussed treatment options and ways Plaintiff could attempt to alleviate her symptoms and pain. Tr. 1220. Dr. Gee's progress note states: "I did talk to her about activity modifications, trying to stay off her feet and do a job that requires her to sit more." Tr. 1220. The ALJ accorded this statement little weight. Tr. 25.

    First, the ALJ concluded Dr. Gee's statement contained "insufficient detail to be of significant probative value" in assessing the residual functional capacity. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 at 1228. The Court agrees the statement that Plaintiff should "sit more" is ambiguous. However, "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence," triggers the ALJ's duty to "conduct an appropriate inquiry" or further develop the record "to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

ORDER - 18

detail. Here, on this record, Dr. Gee's statement combined with the missing medical records discussed above, triggered the ALJ's duty to conduct a further inquiry.

Here, the Court notes that the ALJ also found that "Dr. Moon[sic] saw the claimant on a single occasion," "did not review any treatment evidence," and therefore "had little knowledge of the longitudinal record on which to base an opinion." Tr. 25. The number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 416.927(c). On this record, the fact that an evaluator examined Plaintiff one time is not a legally sufficient basis for rejecting the opinion. This is particularly true, where as occurred here, the ALJ instead relied on a reviewing state agency consultant, whose opinion was rendered in April 2015 before much of the relevant medical evidence existed. Moreover, a medical provider's specialization is a relevant consideration in weighing medical opinion evidence. 20 C.F.R. § 416.927(c)(5). Dr. Gee performed a physical evaluation of Plaintiff, reviewed the "EpicCare records," and reviewed weightbearing x-rays. Tr. 1217-20. This reason was not a specific and legitimate reason for according Dr. Gee's opinion less weight, especially where the credited state agency reviewing physician did not examine Plaintiff or review the entire record including the most recent imaging.

Finally, the ALJ concluded Dr. Gee's opinion that Plaintiff should remain off her feet was inconsistent with his "mostly normal clinical findings" and the overall record. Tr. 25. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Moreover, an ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti*, 533 F.3d at 1041. As discussed above, the ALJ's characterization of Dr. Gee's evaluation reflects a selective reading of the record. Dr. Gee's findings included a number of abnormal findings including mild-to-moderate osteoarthritis of the knee with osteophytes in the patella femoral and tibiofemoral articulations. Tr. 1219. He noted Plaintiff walked with a "slightly antalgic gait" and experienced pain over the joint and upon full extension and flexion. Tr. 1219. He opined cortisone injection and arthroplasty (knee replacement) were options to address Plaintiff's pain. Tr. 1220. As noted *supra*, the overall record, also contains consistent evidence from Plaintiff's treating providers. Defendant's Motion reiterates the ALJ's findings without analysis or addressing the evidence. ECF No. 17 at 17. Given the record and the ALJ's selective evaluation of the medical evidence, inconsistency with the record was not a specific and legitimate reason supported by substantial evidence to accord Dr. Gee's opinion less weight.

ORDER - 20

The Court concludes the ALJ did not provide specific and legitimate reasons to reject Dr. Gee's opinion in favor of the state agency reviewing physician.

### 3. Dr. Moon

Dr. Moon completed a psychological/psychiatric evaluation of Plaintiff on December 10, 2014. Tr. 481-88. Dr. Moon diagnosed Plaintiff with major depressive disorder, recurrent, severe with psychotic features and panic disorder with agoraphobia. Tr. 483. Dr. Moon opined that Plaintiff was markedly limited in ten basic work activities, including the ability to: (i) understand, remember, and persist in tasks by following very short and simple instructions; (ii) understand, remember, and persist in tasks by following detailed instructions; (iii) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; (iv) learn new tasks; (v) perform routine tasks without special supervision; (vi) adapt to changes in a routine work setting; (vii) communicate and perform effectively in a work setting; (viii) complete a normal work day and work week without interruptions from psychologically based symptoms; (ix) maintain appropriate behavior in a work setting; and (x) set realistic goals and plan independently. Tr. 483-84. He also opined Plaintiff was moderately restricted in three other areas. Tr. 484.

The ALJ assigned minimal weight to Dr. Moon's opinion. Tr. 25. Because Dr. Moon's opinion was contradicted by the opinions of state agency consultants

James Bailey, Ph.D. and Eugene Kester, M.D., Tr. 142-43, 157-59, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Moon's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ noted that Dr. Moon saw Plaintiff on a single occasion. Tr. 25. The number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 416.927(c). However, the fact Dr. Moon evaluated Plaintiff one time is not a legally sufficient basis for rejecting the opinion and is inconsistent with the ALJ's decision to assign greater weight to consultants who had no treating or examining relationship with Plaintiff.

Second, the ALJ found that Dr. Moon did not review any treatment records and his assessment "does not seem consistent with the overall record." Tr. 25. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Furthermore, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. See 20 C.F.R. § 416.927(c)(6). The ALJ cited inconsistencies in Plaintiff's presentation while noting she was "typically cooperative, with normal eye contact, speech, thought processes, and movement. She had appropriate grooming and attention, and no significant problem interacting appropriately with providers." Tr. 25. However, the ALJ does not explain how these observations are inconsistent with the 10

ORDER - 22

marked limitations identified by Dr. Moon. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (ALJ's rejection of a physician's opinion on the ground that it was contrary to the record was error, as the ALJ failed to explain why the physician's opinion was flawed); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (the ALJ must "build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings").

The record reflects these mental status observations were typical; for example, Plaintiff's counselor even commented that cooperative behavior and flattened affect was "normal" for Plaintiff. Tr. 633. The ALJ's reason for rejecting Dr. Moon fails to build an "accurate and logical bridge," whereas here, Plaintiff's mental health treatment record is extensive, and it documents serious symptoms observed and reported by providers (beyond the mental status examinations) that might influence Plaintiff's ability to work and would support Dr. Moon's assessment. For example, in January 2015, her counselor noted she experiences symptoms of depression on a daily basis including difficulty sleeping, suicidal ideation, crying spells, feelings of loneliness, and anxiety, especially when traveling in a vehicle. Tr. 638; *see also* Tr. 658 (lack of motivation); Tr. 943 (loss of interest/pleasure); Tr. 991 (panic); Tr. 993 (helplessness and hearing voices); Tr. 1002 (sadness and panic attacks causing loss of breath); Tr. 1005 (low energy and

irritable); Tr. 1009 (isolation); Tr. 1014 (anger); Tr. 1018 (agitation with provider); Tr. 1026 (psychosis); Tr. 1039 (auditory hallucinations); Tr. 1103 (paranoia and fear while driving or in a car). In November 2015, Plaintiff displayed cooperative behavior, normal speech, appropriate appearance, and fair insight; yet her provider observed Plaintiff's mood as depressed and anxious and assessed that despite the provision of mental health services since 2012 "she has been tried on numerous modalities for therapy and they have been unsuccessful," including "medication options." Tr. 899. On this record, the ALJ's rejection of Dr. Moon's opinion due to normal mental status findings is based on an overly simplistic reading of the extensive and complex mental health record. *See, e.g.*, *Holohan*, 246 F.3d at 1207–08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

The ALJ did not provide specific and legitimate reasons supported by substantial evidence for discounting the opinion of the examining psychiatrist, Dr. Moon, in favor of the psychological consultants, Dr. Bailey and Dr. Kester.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 16 at 10-18.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling

ORDER - 24

(SSR) 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. Specifically, the ALJ rejected Plaintiff's symptom allegations related to her seizures, shortness of breath, headaches, knee impairment, diabetes, and mental

impairments due to the alleged inconsistency with the medical evidence and Plaintiff's presentation to medical providers. Tr. 21-24.

The ALJ's evaluation of Plaintiff's symptom claims and the resulting limitations relies entirely on the ALJ's assessment of the medical evidence. Having determined a remand is necessary to readdress the medical source opinions, any reevaluation must necessarily entail a reassessment of Plaintiff's subjective symptom claims. Thus, the Court need not reach this issue and on remand the ALJ must also carefully reevaluate Plaintiff's symptom claims in the context of the entire record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

**C. Step Two**

Plaintiff contends the ALJ erred by failing to find Plaintiff's seizure disorder a severe impairment at step two, which lead to an improper residual functional capacity. ECF No. 16 at 19-20.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). A physical or mental impairment must be established by objective medical evidence from an acceptable medical source; the Plaintiff's own statement of symptoms

alone will not suffice. 20 C.F.R. § 416.921 (eff. Mar. 27, 2017).[3] Once the

Plaintiff produces objective medical evidence of an underlying impairment or

combination of impairments, the ALJ must "consider the claimant's subjective

symptom testimony, such as pain or fatigue, in determining severity." *Smolen*, 80

F.3d at 1290; 20 C.F.R. § 416.929(d)(1) (eff. Mar. 27, 2017) ("Your symptoms,

such as pain, fatigue, shortness of breath, weakness, or nervousness, are considered

in making a determination as to whether your impairment or combination of

impairment(s) is severe.").

An impairment may be found to be not severe when "medical evidence

establishes only a slight abnormality or a combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to

work…." SSR 85-28 at *3. Similarly, an impairment is not severe if it does not

significantly limit a claimant's physical or mental ability to do basic work

activities, which include walking, standing, sitting, lifting, pushing, pulling,

reaching, carrying, or handling; seeing, hearing, and speaking; understanding,

carrying out and remembering simple instructions; responding appropriately to

_____

[3] As of March 27, 2017, 20 C.F.R. § 416.908 (2010) was removed and reserved
and 20 C.F.R. § 416.921 was revised. The Court applies the version that was in
effect at the time of the ALJ's decision.

supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.922 (eff. Mar. 27, 2017); SSR 85-28.[4]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ determined Plaintiff's seizure disorder was not a medically determinable impairment and even if it was, it was not a severe impairment because it caused little functional restriction. Tr. 18.

First, the ALJ found that objective examination findings, including electroencephalogram (EEG) studies, were normal and Plaintiff's provider indicated "only a possible diagnosis of seizures." Tr. 18; *see* Tr. 356 (Oct. 2013 EEG). As Plaintiff contends, EEG testing does not rule out a seizure disorder. In 2014, despite normal EEG findings, neurological specialist with expertise in this

---

[4] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 29

area Mark Holmes, M.D. noted Plaintiff presents with a history of "episodes of transient altered mental status" and though "[t]he nature of these is not clear," "the differential diagnoses must include epileptic seizures." Tr. 395. At Plaintiff's follow-up visit in July 2014, Dr. Holmes diagnosed "transient alterations in awareness. It is still likely that she has epilepsy." Tr. 381; *see* Tr. 898 (Nov. 2015: Plaintiff "has a seizure disorder" that is "well controlled at this time."). Dr. Holmes prescribed and managed Plaintiff's dose of lamotrigine. Tr. 395. The state agency reviewer also acknowledged the epilepsy as a secondary diagnosis. Tr. 133. The ALJ's conclusion that Plaintiff's seizure disorder was not a medically determinable impairment because the record only contains "a possible diagnosis" was not based on substantial evidence.

Next, the ALJ found that the evidence did not establish Plaintiff's seizure disorder caused more than a minimal limitation on Plaintiff's ability to perform basic work-related tasks. Here, the record is replete with documented instances of Plaintiff's seizure-like experiences, which are relevant to the ALJ's final RFC determination. Tr. 85-86, 98-100 (hearing testimony); Tr. 289-91 (seizure questionnaire); Tr. 423 (Oct. 2014: hospitalization for transient ischemic attack with right eye blindness); Tr. 509 (Oct. 2014: progress note discussing relationship between sleep and seizures); Tr. 523 (Feb. 2015: reporting no obvious seizures in several months); Tr. 566-68 (May 2014: told by doctor not to cook or be near oven

for safety issues); Tr. 687 (July 2014: reported seizure while off medication); Tr. 1388-89 (Oct. 2016: recurrent staring spells despite stable therapy with lamotrigine and topiramate; Plaintiff reported increasing episodes especially in last three months, which happen twice weekly and after they occur she will be briefly confused and not know where she is); Tr. 1419 (Dec. 2016: Plaintiff "agreed not to drive" and noted she was not driving due to seizure disorder). Even the state agency physician, Dr. Virji, whom the ALJ credited, recommended an RFC including limitations associated with "seizure precautions." Tr. 141. It is clear the error in failing to consider Plaintiff's seizure disorder was not harmless. The record reflects Plaintiff has been counseled not to drive and experiences significant anxiety, panic and fear when in a car. Tr. 304, 588, 724. Yet at step five, one of the light jobs identified by the ALJ with more limited standing and walking was that of outside deliverer, which as described by the vocational expert, would involve driving. Tr. 111.

The ALJ has committed harmful error in evaluation of the medical evidence at step two. Because this error may impact multiple steps of the sequential evaluation process, on remand, the entire sequential evaluation process.

ORDER - 31

**D. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 16 at 20; ECF No. 19 at 5-6.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on

ORDER - 32

remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Ambiguities in the record exist concerning the combined impact of all of Plaintiff's severe and non-severe impairments. Further proceedings are necessary for the ALJ to properly address the medical evidence, reevaluate Plaintiff's symptom claims, and perform the five-step sequential evaluation anew. On remand, the ALJ will supplement the record with any outstanding evidence pertaining to the relevant time period and develop the record as necessary by ordering consultative examinations and/or taking testimony from medical experts.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

ORDER - 33

1    3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and

2  REMANDING the matter to the Commissioner of Social Security for further

3  proceedings consistent with this recommendation pursuant to sentence four of 42

4  U.S.C. § 405(g).

5    The District Court Executive is directed to file this Order, provide copies to

6  counsel, and **CLOSE THE FILE**.

7    DATED January 10, 2019.

8                     _s/Mary K. Dimke_
                       MARY K. DIMKE
9            UNITED STATES MAGISTRATE JUDGE